Farr, J.
This is an error proceeding prosecuted in this court to reverse a judgment of the court of common pleas of this county. The parties sustain the same relation here as in the court below.
On the 18th day of January, 1916, the plaintiff in error, Irene Davis, as administratrix, began an action in the lower court seeking to recover against the county of Mahoning for the death on or about the 7th day of January, 1916, of her decedent, Robert Davis, which it is claimed resulted from a bullet wound or injury received on said date while decedent was in the employ of The Pittsburgh & *31 Lake Erie Railroad Company, and while walking along its tracks adjacent to Broad street in the municipality of East Youngstown, said county.
The petition among other things avers that at and immediately prior to the hour of midnight on said date there was a collection of people upon and near to said Broad street, in and near to the business district of said village, assembled for an unlawful purpose and intending to do damage and serious injury to divers persons, and pretending to exercise correctional power over divers persons by violence and without authority of law, and that said assemblage of people was intending to and did cause damage to buildings and the contents thereof, within the business district of said village, and intending to do violence to the owners of said buildings and also to the police officers and divers good citizens of said village, and to do or cause • damage to the buildings, properties and bridge of The Youngstown Sheet & Tube Company, and to exercise correctional power over the servants, agents and employes of said company, and was acting with reckless and lawless disregard for the safety and lawful rights of any and all persons; that her decedent while about the performance of his duties as a car repairer and while walking along the tracks of said railroad company, adjacent said Broad street, as aforesaid, suffered a bullet wound by the act or acts of such collection of persons, acting as aforesaid, from which he soon thereafter died and by reason of which plaintiff claims damages against said county of Mahoning in the sum of five thousand dollars.
*32 ■ To said petition an answer was filed admitting the immaterial allegations thereof and denying each and every other averment, and charging that decedent’s death was brought about as the direct and proximate result of his own wilful, negligent and criminal conduct, and that decedent took an active part in the criminal and riotous conduct of said collection or assemblage of people, and that while so engaged he was shot and his life thereby taken, and, if not so taken, that it was taken at the hands of those who were lawfully attempting to quell said riot and to bring to order and justice the persons so collected for riotous and criminal purposes.
Trial was had in the court below and a verdict directed for defendants, upon which judgment was entered, and from which error is prosecuted in this court. The action below was brought under favor of Sections 6278 to 6289, inclusive, General Code.
The record discloses that in the evening of said 7th day of January, 1916, a collection of people had assembled in Broad street of said village of East Youngstown and were rioting by looting and burning buildings and discharging firearms promiscuously; there was also rioting and lawlessness in other parts of said village, which continued at intervals throughout the night. At about midnight an armed party of some fifteen persons approached Broad street from- a westerly direction and they were also discharging firearms somewhat promiscuously. At or near that time 'the fire by the rioters or mob at Broad street became more rapid, then lessened somewhat. It was about this time that the decedent, Davis, was walking along *33 said railroad tracks adjacent said Broad street. Three persons, Mike C'ushner, Joseph Danko and Joseph Cramer, were likewise walking along said tracks, and about ten feet behind Davis, when he suddenly fell to the ground, and when they approached and raised him up he said that he was shot. They then placed him aboard an engine which conveyed him to the hospital, where he died later. The record does not disclose who fired said shot, nor from what direction it came; nor does it disclose that at the time the wound was received the said mob, or the persons approaching from the west, who were also discharging firearms, had any particular person or persons in view, or as the object of their lawlessness. The record does disclose, however, by the testimony of Mr, Woltz, that near five o’clock in the evening rioters were shooting at the bridge of said Youngstown Sheet & Tube Company and that men employed by said company were on said bridge at the time. This is practically the only testimony as to any definite object of the mob’s violence.
It is urged, however, that liability attached as against said county by provision of above Sections 6278 to 6289, General Code, and especially Section 6281, which provides that a person assaulted and lynched by a mob may recover from the county in which such assault is made, etc., and it is conceded that the action below rests largely within the authority vouchsafed by Section 6283, which reads as follows:
“Sec. 6283. A person suffering death or injury from a mob attempting to lynch another person shall come within the provisions of this chapter. *34 He or his legal representatives shall have a like right of action as one purposely injured or killed by such mob.”
And it is further urged that in construing the above section it is necessary to read in connection therewith Section 6278, which provides as follows:
. “Sec. 6278. A collection of people assembled for an unlawful purpose and intending to do damage or injury to any one, or pretending to exercise correctional power over other persons by violence and without authority of law, shall be deemed a ‘mob’ for the purpose of this chapter. An act of violence by a mob upon the body of any person shall constitute a ‘lynching’ within the meaning of this chapter.”
The issue raised here is, therefore, Can recovery for the death of Davis be had against the county, by virtue of the foregoing sections, when, at the moment the fatal wound was received, the firing by the mob at Broad street, as well as by the party approaching from a westerly direction, was desultory and without any definite aim or object, so far as the record discloses, and in the absence of any positive testimony as to the source of the shot or the direction from whence it came? Two words are defined in the above Section 6278, namely, “mob” and “lynching,” and it was evidently not the legislative intent to permit the common-law definitions to control. There is, therefore, no question in the instant case but that a “mob” had assembled, But was there a “lynching?” Was Davis lynched? That is the real issue. Lynching is defined in said Section 6278 as follows: “An act of violence by *35 a mob upon the body of any person shall constitute a ‘lynching’ within the meaning of this chapter.”
Three things are therefore necessary to constitute such lynching, a mob, a person, and an act of violence upon the body of that person by such mob; and, whenever the act of violence is visited upon the body of any person, then it must be said that such mob has a definite fixed purpose as to such person; that is, it purposes to do the violent act, and the person upon whom it is visited is the objective of the act.. Such is clearly the legislative intent, and is further indicated in Section 6283, as follows:
“A person suffering death or injury from a mob attempting to lynch another person shall come within the provisions of this chapter.”
An “attempt” is the effort or endeavor to carry into execution a previously conceived plan or purpose; therefore the phrase “another person” can not mean “no one in particular,” or “everybody in general,” but must be the subject of the plan, the object of the purpose. And such was the legislative intent. Said act, though liberal in its terms, was never intended to provide compensation for the indiscriminate, lawless, predatory acts of a riotous mob, generally, but not definitely, on mischief bent, but to provide a remedy for damages suffered from definite, specific acts; and such is the reasonable import of the language used, easily deducible therefrom, and it is the ordinary and reasonable meaning of the language used which must control in the act’s construction. Conrad v. Davies, Auditor, 14 C. C., N. S., 475, 477; Dorgan v. Columbus et al., *36 12 Dec., 121, 128, and Elyria Gas & Water Co. v. City of Elyria, 57 Ohio St., 383.
Attention is called to the case of Caldwell v. Commissioners of Cuyahoga County, 62 Ohio St., 318, which it is urged is helpful in the instant case; but which is found not well in point, as it determines principally a constitutional question. A very well-considered case, however, and one regarded as worthy of notice here, is that of Gray v. Gibson et al., 12 N. P., N. S., 673, the first section of the syllabus of which reads as follows:
“The statutory provision for recovery of damages by persons who have suffered at the hands of a mob is limited to injuries, whether fatal or otherwise, suffered from a mob attempting to lynch another, and does not embrace injuries resulting from violence by a mob having no intent or purpose to lynch.”
The foregoing is well in point and involves the construction of some of the sections of the General Code under consideration here.
In the case at bar there is no definite proof of the source from which the fatal shot came, or that at the time Davis fell mortally wounded the mob had any object or aim other than to burn, pillage and shoot aimlessly in its drunken frenzy, and for this reason the olaintiff failed to maintain the action.
Therefore, in view of all the foregoing, it must be held that the court below properly arrested the case from the consideration of the jury, and the judgment will be affirmed.

Judgment affirmed.

Pollock and Metcalfe, JJ., concur.